1 | IGNACIA S. MORENO
Assistant Attorney General
2 | Environment and Natural Resources Division

3 | MARK SABATH
E-mail:  mark.sabath@usdoj.gov
4 | Environmental Enforcement Section
Environment and Natural Resources Division
5 | U.S. Department of Justice
P.O. Box 7611
6 | Washington, DC 20044-7611
Massachusetts Bar Number:  659551
7 | Telephone:  (202) 514-1196
Facsimile:  (202) 514-2583

8 |

9 | Attorneys for Plaintiff the United States of America

10 | (Additional Attorneys Listed on Following Page)

**FILED**
CLERK, U.S. DISTRICT COURT

JUN 17 2011

CENTRAL DISTRICT OF CALIFORNIA
BY

11 |
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

12 |

13 | UNITED STATES OF AMERICA
and PEOPLE OF THE STATE OF
14 | CALIFORNIA, *ex rel.* CALIFORNIA
DEPARTMENT OF FISH AND
15 | GAME and CALIFORNIA
REGIONAL WATER QUALITY
16 | CONTROL BOARD, CENTRAL
COAST REGION,
17 |
Plaintiffs,
18 |
19 | v.
20 | HVI CAT CANYON, INC., f/k/a
GREKA OIL & GAS, INC.
21 |
Defendant.
22 |

23 |

24 |

25 |

26 |

27 |

28 |

CV11- 05097 DDP(R2x)

Civil Action No.

COMPLAINT FOR CIVIL
PENALTIES, INJUNCTIVE RELIEF,
COST RECOVERY, AND DAMAGES
UNDER THE CLEAN WATER ACT,
OIL POLLUTION ACT OF 1990,
CALIFORNIA WATER CODE, AND
CALIFORNIA FISH AND GAME
CODE

KAMELA D. HARRIS.
Attorney General of California
RICHARD J. MAGASIN
Supervising Deputy Attorney General
GARY E. TAVETIAN
Deputy Attorney General
E-mail:  Gary.Tavetian@doj.ca.gov
California Bar No. 117135
ERIC M. KATZ
Deputy Attorney General
E-mail:  Eric.Katz@doj.ca.gov
California Bar No. 204011
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone:  (213) 897-2000
Facsimile:  (213) 897-2802

Attorneys for Plaintiff People of the State of
California *ex rel.* the California Department of Fish
and Game and the California Regional Water
Quality Control Board, Central Coast Region

1  The United States of America, by authority of the Attorney General of the

2  United States and through the undersigned attorneys, acting at the request of the

3  Administrator of the United States Environmental Protection Agency ("EPA") and

4  the United States Coast Guard ("Coast Guard"), and the People of the State of

5  California *ex rel.* California Department of Fish and Game ("DFG") and California

6  Regional Water Quality Control Board, Central Coast Region ("Regional Board"),

7  file this Complaint and allege as follows:

8                              NATURE OF THE ACTION

9       1.     This is a civil action for civil penalties, injunctive relief, cost

10  recovery, and damages brought against Defendant HVI Cat Canyon, Inc., f/k/a

11  Greka Oil & Gas, Inc. ("Defendant") under the Clean Water Act ("CWA"), 33

12  U.S.C. § 1251 et seq.; the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 et

13  seq.; the California Water Code § 13000 et seq.; and the California Fish and Game

14  Code § 5650 et seq.

15            JURISDICTION, AUTHORITY, VENUE, AND NOTICE

16      2.     This Court has jurisdiction over the subject matter of this action and

17  over the parties pursuant to Sections 309(b) and 311(b)(7)(E) and (n) of the CWA,

18  33 U.S.C. §§ 1319(b) and 1321(b)(7)(E) and (n); Section 1017(b) of the OPA, 33

19  U.S.C. § 2717(b); 28 U.S.C. §§ 1331, 1345, and 1355; and California Water Code

20  section 13385(a)(5).  The Court has supplemental jurisdiction over the state law

21  causes of action for which there is no federal question jurisdiction pursuant to 28

22  U.S.C. § 1367 because the state law causes of action are so related to the United

23  States' claims that they form part of the same case or controversy.  The Court has

24  personal jurisdiction over the parties to this action, including DFG and the

25  Regional Board by virtue of their filing this Complaint.

26      3.     Authority to bring this action on behalf of the United States is vested

27  in the United States Department of Justice by Section 506 of the CWA, 33 U.S.C.

28  § 1366; 28 U.S.C. §§ 516 and 519; and Section 10(a) of Executive Order No.

1  12,777, 56 Fed. Reg. 54,757(Oct. 22, 1991).

2      4.     Authority to bring this action on behalf of DFG and the Regional

3  Board is vested in the California Attorney General by California Water Code

4  sections 13350(g) and 13385(b) and California Fish and Game Code section

5  5650.1(d).

6      5.     Venue is proper in this District pursuant to Sections 309(b) and

7  311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); Section

8  1017(b) of the OPA, 33 U.S.C. § 2717(b); and 28 U.S.C. §§ 1391 and 1395(a),

9  because Defendant does business in this District and the events giving rise to the

10  claims alleged herein occurred in this District.

11      6.     The United States has given notice of the commencement of this

12  action to the State of California, as required by Section 309(b) of the CWA, 33

13  U.S.C. § 1319(b).

14  <div align="center">**DEFENDANT**</div>

15      7.     Defendant is a Colorado corporation with headquarters in Santa

16  Maria, California.  On May 12, 2011, Greka Oil & Gas, Inc. filed Articles of

17  Amendment with the Colorado Secretary of State changing its name to HVI Cat

18  Canyon, Inc.

19  <div align="center">**STATUTORY AND REGULATORY BACKGROUND**</div>

20  <div align="center">**Section 311 of the Clean Water Act**</div>

21      8.     Section 311(b) of the CWA, 33 U.S.C. § 1321(b), prohibits the

22  discharge of oil or hazardous substances into or upon the navigable waters of the

23  United States or adjoining shorelines in such quantities as the President determines

24  may be harmful to the public health or welfare or environment of the United States.

25      9.     The CWA defines "discharge" to include "any spilling, leaking,

26  pumping, pouring, emitting, emptying or dumping," except as specifically

27  excluded therein, 33 U.S.C. § 1321(a)(2); "oil" as "oil of any kind or in any form,

28  including, but not limited to, petroleum, fuel oil, sludge, oil refuse, and oil mixed

<div align="center">- 2 -</div>

1  with wastes other than dredged spoil," 33 U.S.C. § 1321(a)(1); and "navigable

2  waters" as "the waters of the United States, including the territorial seas," 33

3  U.S.C. § 1362(7).

4       10.    Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4),

5  EPA, acting through its delegated authority under Executive Order No. 11,735, 38

6  Fed. Reg. 21,243 (Aug. 7, 1973), has determined by regulation that discharges of

7  oil in such quantities as may be harmful to the public health or welfare or

8  environment of the United States include discharges of oil that "(a) Violate

9  applicable water quality standards; or (b) Cause a film or sheen upon or

10  discoloration of the surface of the water or adjoining shorelines or cause a sludge

11  or emulsion to be deposited beneath the surface of the water or upon adjoining

12  shorelines." 40 C.F.R. § 110.3.

13       11.    Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A),

14  provides that any person who is the owner, operator, or person in charge of an

15  onshore facility from which oil is discharged in violation of Section 311(b)(3) of

16  the CWA shall be subject to a civil penalty.

17       12.    Section 311(a) of the CWA defines "person" to include corporations,

18  33 U.S.C. § 1321(a)(7); and "onshore facility" as "any facility (including, but not

19  limited to, motor vehicles and rolling stock) of any kind located in, on, or under,

20  any land within the United States other than submerged land," 33 U.S.C.

21  § 1321(a)(10).

22       13.    Pursuant to Section 311(b)(7)(A) of the CWA, EPA's 2004 Civil

23  Monetary Penalty Inflation Adjustment Rule, 69 Fed. Reg. 7121 (Feb. 13, 2004),

24  and EPA's 2008 Civil Monetary Penalty Inflation Adjustment Rule, 73 Fed. Reg.

25  75,340 (Dec. 11, 2008), each violation of Section 311(b)(3) of the CWA occurring

26  from March 15, 2004, through January 12, 2009, is subject to a civil penalty of up

27  to $32,500 per day or up to $1,100 per barrel of oil discharged, and each violation

28  of Section 311(b)(3) of the CWA occurring after January 12, 2009, is subject to a

1  civil penalty of up to $37,500 per day or up to $1,100 per barrel of oil discharged.
2  40 C.F.R. § 19.4.
3      14.    Pursuant to Section 311(b)(7)(D) of the CWA, 33 U.S.C.
4  § 1321(b)(7)(D), and EPA's 2004 Civil Monetary Penalty Inflation Adjustment
5  Rule, 69 Fed. Reg. 7121 (Feb. 13, 2004), where the violation of Section 311(b)(3)
6  of the CWA occurring after March 15, 2004 is the result of gross negligence or
7  willful misconduct, the owner, operator, or person in charge is subject to a civil
8  penalty of up to $4,300 per barrel of oil discharged.
9  <u>Sections 301 and 309 of the Clean Water Act</u>
10      15.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the
11  discharge of any pollutant by any person, except as authorized by the CWA.
12      16.    Section 502 of the CWA defines "person" to include corporations, 33
13  U.S.C. § 1362(5); "discharge of a pollutant" to include "any addition of any
14  pollutant to navigable waters from any point source," 33 U.S.C. § 1362(12);
15  "pollutant" to include "solid waste, . . . chemical wastes, . . . biological materials, .
16  . . and industrial . . . waste discharged into water," 33 U.S.C. § 1362(6); "navigable
17  waters" as "the waters of the United States, including the territorial seas," 33
18  U.S.C. § 1362(7); and "point source" as "any discernible, confined and discrete
19  conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit,
20  well, discrete fissure, container, rolling stock, concentrated animal feeding
21  operation, or vessel or other floating craft, from which pollutants are or may be
22  discharged," 33 U.S.C. § 1362(14).
23      17.    Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes EPA to
24  bring a civil action seeking "appropriate relief, including a permanent or temporary
25  injunction," for violations of Section 301 of the CWA.
26  <u>Oil Pollution Prevention Regulations</u>
27      18.    Section 311(j)(1) of the CWA, 33 U.S.C. § 1321(j)(1), authorizes the
28  President to issue regulations establishing procedures, methods, equipment, and

- 4 -

1   other requirements to prevent and contain discharges of oil and hazardous
2   substances from onshore facilities.

3       19.     Pursuant to Section 311(j)(1) of the CWA, EPA, acting through its
4   delegated authority under Executive Order No. 11,735, 38 Fed. Reg. 21,243 (Aug.
5   7, 1973), and Section 2(b)(1) of Executive Order No. 12,777, 56 Fed. Reg. 54,757
6   (Oct. 22, 1991), has issued Oil Pollution Prevention regulations governing owners
7   and operators of non-transportation-related onshore and offshore facilities.  These
8   regulations are found at 40 C.F.R. Part 112.

9       20.     The Oil Pollution Prevention regulations apply to "any owner or
10   operator of a non-transportation-related onshore or offshore facility engaged in
11   drilling, producing, gathering, storing, processing, refining, transferring,
12   distributing, using, or consuming oil and oil products, which, due to its location,
13   could reasonably be expected to discharge oil in quantities that may be harmful, as
14   described in [40 C.F.R. § 110.3], into or upon the navigable waters of the United
15   States or adjoining shorelines . . . that has oil in: (1) Any aboveground container;
16   . . . or (3) Any container that is used for standby storage, for seasonal storage, or
17   for temporary storage, or not otherwise 'permanently closed' as defined in [40
18   C.F.R.] § 112.2."  40 C.F.R. § 112.1(b).

19       21.     40 C.F.R. § 112.2 defines "onshore facility" as "any facility of any
20   kind located in, on, or under any land within the United States, other than
21   submerged lands."

22       22.     40 C.F.R. § 112.3 requires the owner or operator of a regulated
23   facility to prepare and implement a written Spill Prevention, Control, and
24   Countermeasure Plan ("SPCC Plan") in accordance with 40 C.F.R. § 112.7 and
25   any other applicable section of 40 C.F.R. Part 112.

26       23.     On July 17, 2002, EPA promulgated a final rule ("Revised Rule")
27   amending the Oil Pollution Prevention regulations.  67 Fed. Reg. 47,042 (July 17,
28   2002).  The effective date of the Revised Rule was August 16, 2002.

24.     The owner or operator of a regulated facility in operation as of August 16, 2002, that had <u>not</u> prepared and implemented an SPCC Plan as of that date was required to prepare and implement an SPCC Plan immediately that met the requirements of the Revised Rule.  40 C.F.R. § 112.3; 67 Fed. Reg. 47,042, 47,082.

25.     The owner or operator of a regulated facility in operation as of August 16, 2002, that <u>had</u> prepared and implemented a SPCC Plan as of that date was required (a) to maintain an SPCC Plan in accordance with the requirements of 40 C.F.R. Part 112 (2002); and (b) to amend the SPCC Plan to meet the requirements of the Revised Rule, and implement that amended SPCC Plan, no later than November 10, 2010 (for onshore facilities required to have and submit Facility Response Plans), or November 10, 2011 (for other onshore facilities).  40 C.F.R. § 112.3(a)(1); 67 Fed. Reg. 47,042, 47,082; 75 Fed. Reg. 63,093, 63,096 (Oct. 14, 2010).

26.     Pursuant to 40 C.F.R. § 112.20(a), the "owner or operator of any non-transportation-related onshore facility that, because of its location, could reasonably be expected to cause substantial harm to the environment by discharging oil into or on the navigable waters or adjoining shorelines" must prepare and submit to EPA a Facility Response Plan that meets the requirements set forth in that section.

27.     Pursuant to 40 C.F.R. § 112.20(f)(1), a facility "could reasonably be expected to cause substantial harm to the environment" within the meaning of 40 C.F.R. § 112.20(a) if, <u>inter alia</u>, the facility has a total oil storage capacity of at least one million gallons and has had a reportable oil discharge of at least 10,000 gallons within the last five years.

28.     Pursuant to 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), and EPA's 2004 and 2008 Civil Monetary Penalty Inflation Adjustment Rules, 69 Fed. Reg. 7121 (Feb. 13, 2004) and 73 Fed. Reg. 75,340 (Dec. 11, 2008), each violation of the Oil Pollution Prevention regulations occurring from March 15, 2004,

1  through January 12, 2009, is subject to a civil penalty of up to $32,500 per day of

2  violation, and each violation of the Oil Pollution Prevention regulations occurring

3  after January 12, 2009, is subject to a civil penalty of up to $37,500 per day of

4  violation. 40 C.F.R. § 19.4.

5  <div align="center">The Oil Pollution Act of 1990</div>

6       29.    Section 1002(a) of the OPA, 33 U.S.C. § 2702(a), provides that "each

7  responsible party for . . . a facility from which oil is discharged, or which poses the

8  substantial threat of a discharge of oil, into or upon the navigable waters or

9  adjoining shorelines . . . is liable for the removal costs and damages specified in

10 [33 U.S.C. § 2702(b)] that result from such incident."

11      30.    Section 1001(32) of the OPA, 33 U.S.C. § 2701(32), defines

12 "responsible party" to include, "[i]n the case of an onshore facility (other than a

13 pipeline), any person owning or operating the facility . . . ."

14      31.    Section 1001(24) of the OPA, 33 U.S.C. § 2701(24), defines "onshore

15 facility" to mean "any facility . . . of any kind located in, on, or under, any land

16 within the United States other than submerged land."

17      32.    Section 1001(9) of the OPA, 33 U.S.C. § 2701(9), defines "facility" to

18 mean "any structure, group of structures, equipment, or device (other than a vessel)

19 which is used for one or more of the following purposes: exploring for, drilling

20 for, producing, storing, handling, transferring, processing, or transporting oil."

21      33.    Section 1001(27) of the OPA, 33 U.S.C. § 2701(27), defines "person"

22 to include a corporation.

23      34.    Section 1001(23) of the OPA, 33 U.S.C. § 2701(23), defines "oil" to

24 mean "oil of any kind or in any form, including, but not limited to, petroleum, fuel

25 oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil."

26      35.    Section 1001(7) of the OPA, 33 U.S.C. § 2701(7), defines "discharge"

27 to mean "any emission (other than natural seepage), intentional or unintentional"

28 and to include "spilling, leaking, pumping, pouring, emitting, emptying, or

<div align="center">- 7 -</div>

1  dumping."

2      36.    Section 1001(21) of the OPA, 33 U.S.C. § 2701(21), defines

3  "navigable waters" as "the waters of the United States, including the territorial

4  seas."

5      37.    Section 1001(31) of the OPA, 33 U.S.C. § 2701(31), defines "removal

6  costs" to mean "the costs of removal that are incurred after a discharge of oil has

7  occurred or, in any case in which there is a substantial threat of a discharge of oil,

8  the costs to prevent, minimize, or mitigate oil pollution from such an incident."

9      38.    Section 1001(30) of the OPA, 33 U.S.C. § 2701(30), defines

10 "remove" and "removal" to mean "containment and removal of oil or a hazardous

11 substance from water and shorelines or the taking of other actions as may be

12 necessary to minimize or mitigate damage to the public health or welfare,

13 including, but not limited to, fish, shellfish, wildlife, and public and private

14 property, shorelines, and beaches."

15     39.    Section 1002(b)(1) of the OPA, 33 U.S.C. § 2702(b)(1), provides that

16 the "removal costs" referred to in Section 1002(a) of the OPA, 33 U.S.C.

17 § 2702(a), include "all removal costs incurred by the United States . . . under [33

18 U.S.C. § 1321] subsection (c), (d), (e), or (l)."

19     40.    Section 1001(14) of the OPA, 33 U.S.C. § 2701(14), defines

20 "incident" to mean "any occurrence or series of occurrences having the same

21 origin, involving one or more . . . facilities . . . resulting in the discharge or

22 substantial threat of discharge of oil."

23     41.    Federal removal actions are funded through the Oil Spill Liability

24 Trust Fund ("Fund"), which is administered by the Coast Guard's National

25 Pollution Funds Center and financed in part by recoveries from responsible parties.

26            <u>The California Water Code Section 13350</u>

27     42.    California Water Code section 13350(a) prohibits, through the

28 imposition of civil liability, any person from causing or permitting "any oil or

- 8 -

1   residuary product of petroleum to be deposited in or on any waters of the state

2   . . . ."

3        43.    California Water Code section 13050(e) defines "waters of the state"

4   as "any surface water or groundwater, including saline waters, within the

5   boundaries of the state."

6        44.    The scope of liability for violation of California Water Code section

7   13350(a) is set forth in California Water Code section 13350(d), which authorizes

8   a court to impose civil liability on either a per day basis, or a per gallon basis, but

9   not both.  The per day penalty may not exceed $15,000 for each day the violation

10  occurs, and the per gallon penalty may not exceed 20 dollars for each gallon of

11  waste discharged.

12                   The California Water Code Section 13385

13       45.    The California Water Code also prohibits, through the imposition of

14  civil liability, the violation of certain provisions of the federal CWA.  In particular,

15  California Water Code section 13385(a)(5) authorizes the imposition of civil

16  liability on any person who violates, among other provisions, CWA section 301.

17       46.    As discussed above, CWA section 301(a), 33 U.S.C. § 1311(a),

18  prohibits the discharge of any pollutant by any person except in accordance with

19  certain requirements, such as holding a valid National Pollutant Discharge

20  Elimination System ("NPDES") permit.

21       47.    California Water Code section 13385(b) provides for the imposition

22  of civil penalties for violations of section 13385(a).  Available penalties include a

23  per day penalty, plus a per gallon penalty in certain circumstances.  The per day

24  penalty may not exceed $25,000 per day.  The per gallon penalty may be imposed

25  in an amount not to exceed 25 dollars per gallon for each gallon over 1,000 gallons

26  discharged but not cleaned up.

27                 The California Fish and Game Code Section 5650

28       48.    California Fish and Game Code section 5650(a) prohibits placing

                                    - 9 -

petroleum or any residuary product of petroleum in or on a water of the state, or in a place where it can pass into a water of the state.

49.   California Fish and Game Code section 89.1 defines "water of the state" to have the same meaning as used in the California Water Code section 13050(e).

50.   California Fish and Game Code section 5650.1 provides that "[e]very person who violates Section 5650 is subject to a civil penalty of not more than twenty-five thousand dollars ($25,000) for each violation."

## The California Fish and Game Code Section 12016

51.   California Fish and Game Code section 12016(a) provides that "any person who discharges or deposits any substance or material deleterious to fish, plan, bird, or animal life or their habitat" is "liable civilly to the department [DFG] for all actual damages to fish, plant, bird, or animal life or their habitat . . . ."

52.   California Fish and Game Code section 12016(a) also provides that DFG is also entitled to recover "the reasonable costs incurred in cleanup the deleterious substance or material or abating its effects, or both."

## The California Fish and Game Code Section 13013

53.   California Fish and Game Code section 13230 authorizes DFG to expend monies from its Oil Pollution Administration Subaccount to administer certain pollution response, abatement and habitat restoration activities.

54.   California Fish and Game Code section 13013 requires DFG to "recover from the spiller [or] responsible party . . . all expenditures paid from the" Oil Pollution Administration Subaccount "and all costs incurred by the department arising from the administration and enforcement of applicable pollution laws."

## GENERAL ALLEGATIONS

55.   Defendant is a "person" within the meaning of Sections 311(a)(7) and 502(5) of the CWA, 33 U.S.C. §§ 1321(a)(7) and 1362(5); Section 1001(27) of the OPA, 33 U.S.C. § 2701(27); California Water Code sections 13350 and 13385; and

1  California Fish and Game Code sections 5650, 5650.1, and 12016.

2      56.    Defendant is a "spiller" or "responsible party" within the meaning of
3  California Fish and Game Code section 13013.

4      57.    At times relevant to this action, Defendant owned and/or operated the
5  12 oil and gas production facilities identified in Attachment A.  Defendant
6  continues to own and/or operate each facility identified in Attachment A except for
7  the U-Cal Facility.

8      58.    At times relevant to this action, Defendant owned and/or operated the
9  Bradley Three-Island Facility, an oil and gas production facility located at 3851
10  Telephone Road in Santa Maria, California.  Defendant continues to own and/or
11  operate the Bradley Three-Island Facility.

12      59.    Defendant's oil and gas production facilities identified in Attachments
13  A and the Bradley Three-Island Facility extract crude oil from oil reservoirs
14  through the injection of heated water.  The fluids pumped from the ground are a
15  combination of crude oil and produced water.  In order to make the crude oil
16  suitable for processing, Defendant separates crude oil from produced water in
17  tanks, sumps, separators, and ponds.

18      60.    Produced water is present in a reservoir with crude oil, or injected into
19  the reservoir to help extract crude oil, and is produced to the surface together with
20  the crude oil.  Produced water typically contains water, crude oil, grease, dissolved
21  salts, organic compounds, and inorganic compounds.

22      61.    Crude oil and produced water are "oil" within the meaning of Section
23  311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1); 40 C.F.R. § 112.2; and Section
24  1001(23) of the OPA, 33 U.S.C. § 2701(23).

25      62.    Crude oil and produced water are "pollutants" within the meaning of
26  Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

27      63.    Crude oil and produced water are "oil or residuary products of
28  petroleum" within the meaning of California Water Code section 13350(a).

- 11 -

64.     Crude oil and produced water are "petroleum . . . or any residuary product of petroleum" and a "substance or material deleterious to fish, plant life, or bird life" within the meaning of California Fish and Game Code section 5650.

<div align="center">Davis Facility Spills</div>

65.     On or about December 7, 2005, an injection tank known as Waste Water Tank #2 at Defendant's Davis Facility in Los Olivos, California, overfilled and ruptured, spilling crude oil and produced water ("December 2005 Davis Spill").  The crude oil and produced water escaped the Davis Facility's secondary containment unit and flowed down an access road and through a drainage culvert.

66.     Crude oil and produced water that spilled from the Davis Facility during the December 2005 Davis Spill reached an unnamed tributary to Zaca Creek that runs through Santa Barbara County Assessor Parcel Numbers 133-190-001, 133-190-004, 133-190-007, 133-190-009, and 133-151-058 ("Zaca Tributary") and its adjoining shorelines.

67.     The December 2005 Davis Spill was of such quantity as to cause a film or sheen upon, or discoloration of, Zaca Tributary or adjoining shorelines, or to cause a sludge or emulsion to be deposited into Zaca Tributary or upon adjoining shorelines.

68.     On or about January 5, 2008, Waste Water Tank #2 at the Davis Facility overfilled and ruptured, spilling crude oil and produced water ("January 2008 Davis Spill").  The crude oil and produced water escaped the Davis Facility's secondary containment unit and flowed down an access road and through a drainage culvert.

69.     Crude oil and produced water that spilled from the Davis Facility during the January 2008 Davis Spill reached Zaca Tributary and its adjoining shorelines.

70.     The January 2008 Davis Spill was of such quantity as to cause a film or sheen upon, or discoloration of, Zaca Tributary or adjoining shorelines, or to

1    cause a sludge or emulsion to be deposited into Zaca Tributary or upon adjoining

2    shorelines.

3         71.     Defendant owned and/or operated the Davis Facility at the time of the

4    December 2005 Davis Spill and the January 2008 Davis Spill.

5         72.     The Davis Facility is a structure, group of structures, equipment, or

6    device used for exploring for, drilling for, producing, storing, handling,

7    transferring, processing, and/or transporting oil.

8         73.     The Davis Facility is a "facility" within the meaning of Section

9    1001(9) of the OPA, 33 U.S.C. § 2701(9).

10        74.     The Davis Facility is a facility located on land within the United

11    States that is not submerged land.

12        75.     The Davis Facility is an "onshore facility" within the meaning of

13    Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10), and Section 1001(24) of

14    the OPA, 33 U.S.C. § 2701(24).

15        76.     Waste Water Tank #2 is a container from which pollutants are or may

16    be discharged.

17        77.     Waste Water Tank #2 is a "point source" within the meaning of

18    Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

19        78.     Neither the 2005 Davis Spill nor the January 2008 Davis Spill was

20    authorized by the CWA, or by a permit or regulation issued pursuant to the CWA.

21        79.     Zaca Tributary is a tributary to Zaca Creek. Zaca Creek is a tributary

22    to the Santa Ynez River. The Santa Ynez River is a tributary to the Santa Ynez

23    River Estuary, a traditionally navigable water that flows into the Pacific Ocean.

24        80.     Zaca Tributary, Zaca Creek, and the Santa Ynez River each have a

25    bed, banks, and ordinary high water marks.

26        81.     Zaca Tributary, Zaca Creek, the Santa Ynez River, and the Santa

27    Ynez River Estuary are "navigable waters" within the meaning of Sections

28    311(b)(3) and 502(7) of the CWA, 33 U.S.C. §§ 1321(b)(3) and 1362(7), and

1   Section 1001(21) of the OPA, 33 U.S.C. § 2701(21).

2       82.    The December 2005 Davis Spill and January 2008 Davis Spill were

3   discharges of oil into or upon the navigable waters of the United States or

4   adjoining shorelines within the meaning of Section 311(b)(3) of the CWA, 33

5   U.S.C. § 1321(b)(3).

6       83.    The December 2005 Davis Spill and January 2008 Davis Spill were

7   each of a quantity "as may be harmful" within the meaning of Section 311(b)(3) of

8   the CWA, 33 U.S.C. § 1321(b)(3), and 40 C.F.R. § 110.3.

9       84.    The December 2005 Davis Spill and January 2008 Davis Spill were

10  unlawful discharges of a pollutant within the meaning of Section 301(a) of the

11  CWA, 33 U.S.C. § 1311(a).

12      85.    The January 2008 Davis Spill was an "incident" within the meaning

13  of Section 1001(14) of the OPA, 33 U.S.C. § 2701(14).

14      86.    After the January 2008 Davis Spill, EPA and the Coast Guard

15  incurred costs in the amount of $403,921.87 in their efforts to contain and remove

16  oil from water and shorelines, or in taking other actions as necessary to minimize

17  or mitigate damage to the public health or welfare.

18      87.    The removal costs incurred by EPA and the Coast Guard in

19  connection with the January 2008 Davis Spill were paid from the Fund.

20      88.    On December 30, 2009, the Coast Guard, on behalf of the Fund, sent

21  Defendant a written request under Subchapter I of the OPA for compensation in

22  the amount of $403,921.87 for removal costs incurred in connection with the

23  January 2008 Davis Spill.

24      89.    Defendant has not paid the Coast Guard for removal costs incurred in

25  connection with the January 2008 Davis Spill.

26      90.    The January 2008 Davis Spill was a release to a water of the state

27  within the meaning of California Water Code section 13050(e), which caused

28  natural resource damages, and for which DFG expended monies from the Oil

- 14 -

1  Pollution Administration Subaccount which Defendant has not repaid in full to

2  DFG.

3  <center>Bell Facility Spills</center>

4      91.    On or about July 16, 2007, a flowline at Defendant's Bell Facility in

5  Santa Maria, California, ruptured, spilling crude oil and produced water ("July

6  2007 Bell Spill").

7      92.    Crude oil and produced water that spilled from the Bell Facility

8  during the July 2007 Bell Spill reached an unnamed tributary to Sisquoc Creek that

9  runs along Palmer Road ("Palmer Road Creek") and its adjoining shorelines.

10      93.    The July 2007 Bell Spill was of such quantity as to cause a film or

11  sheen upon, or discoloration of, Palmer Road Creek or adjoining shorelines, or to

12  cause a sludge or emulsion to be deposited into Palmer Road Creek or upon

13  adjoining shorelines.

14      94.    On or about December 7, 2007, an injection pond at the Bell Facility

15  known as the Blochman Pond overflowed, spilling crude oil and produced water

16  ("December 2007 Bell Spill").  The crude oil and produced water escaped the Bell

17  Facility's secondary containment unit.

18      95.    Crude oil and produced water that spilled from the Bell Facility

19  during the December 2007 Bell Spill reached Palmer Road Creek and its adjoining

20  shorelines.

21      96.    The December 2007 Bell Spill was of such quantity as to cause a film

22  or sheen upon, or discoloration of, Palmer Road Creek or adjoining shorelines, or

23  to cause a sludge or emulsion to be deposited into Palmer Road Creek or upon

24  adjoining shorelines.

25      97.    On or about January 29, 2008, a corroded pipe at a settling pond at the

26  Bell Facility failed, spilling crude oil and produced water ("January 2008 Bell

27  Spill").  The crude oil and produced water escaped the Bell Facility's secondary

28  containment unit.

<center>- 15 -</center>

1    98.    Crude oil and produced water that spilled from the Bell Facility

2    during the January 2008 Bell Spill reached Palmer Road Creek, Sisquoc Creek,

3    and their adjoining shorelines.

4    99.    The January 2008 Bell Spill was of such quantity as to cause a film or

5    sheen upon, or discoloration of, Palmer Road Creek or adjoining shorelines, or to

6    cause a sludge or emulsion to be deposited into Palmer Road Creek or upon

7    adjoining shorelines.

8    100.   On or about April 15, 2008, EPA determined that crude oil and

9    produced water were leaking through the cracked concrete walls of a surface

10   impoundment at the Bell Facility known as the Gato Ponds ("April 2008 Bell

11   Spill").

12   101.   The Gato Ponds were approximately 100 feet from Sisquoc Creek.

13   102.   The April 2008 Bell Spill posed a substantial threat of a discharge of

14   oil into or upon Sisquoc Creek or adjoining shorelines.

15   103.   On April 30, 2008, EPA issued Defendant an Order for Removal,

16   Mitigation or Prevention of a Substantial Threat of Oil Discharge ("Gato Ponds

17   Removal Order") under Section 311(c) of the CWA, 33 U.S.C. § 1321(c), directing

18   Defendant to remove the materials in the Gato Ponds, remove or decontaminate the

19   Gato Ponds and the associated superstructure, and sample subsurface soil beneath

20   and adjacent to the Gato Ponds for contamination.

21   104.   Crude oil and produced water also spilled from a pipe, flowline, or

22   injection line at the Bell Facility on or about June 8, 2005; July 13, 2005; August

23   11, 2005; December 27, 2008 ("December 2008 Bell Spill"); May 1, 2009;

24   October 14, 2010; and December 21, 2010.

25   105.   Crude oil and/or produced water that spilled from the Bell Facility on

26   or about each of the dates listed in Paragraph 104 reached Palmer Road Creek and

27   its adjoining shorelines.

28   106.   Each of the spills described in Paragraph 104 was of such quantity as

1  to cause a film or sheen upon, or discoloration of, Palmer Road Creek or adjoining

2  shorelines, or to cause a sludge or emulsion to be deposited into Palmer Road

3  Creek or upon adjoining shorelines.

4       107.   Defendant owned and/or operated the Bell Facility at the time of the

5  July 2007 Bell Spill, the December 2007 Bell Spill, the January 2008 Bell Spill,

6  the April 2008 Bell Spill, and each of the spills described in Paragraph 104.

7       108.   The Bell Facility is a structure, group of structures, equipment, or

8  device used for exploring for, drilling for, producing, storing, handling,

9  transferring, processing, and/or transporting oil.

10       109.   The Bell Facility is a "facility" within the meaning of Section 1001(9)

11  of the OPA, 33 U.S.C. § 2701(9).

12       110.   The Bell Facility is a facility located on land within the United States

13  that is not submerged land.

14       111.   The Bell Facility is an "onshore facility" within the meaning of

15  Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10), and Section 1001(24) of

16  the OPA, 33 U.S.C. § 2701(24).

17       112.   The pipes, flowlines, and injection lines described in Paragraphs 91,

18  97, and 104 are pipes and/or conduits from which pollutants are or may be

19  discharged.

20       113.   The Blochman Pond at the Bell Facility is a container from which

21  pollutants are or may be discharged.

22       114.   The pipes, flowlines, and injection lines described in Paragraphs 91,

23  97, and 104 and the Blochman Pond at the Bell Facility are "point sources" within

24  the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

25       115.   The July 2007 Bell Spill, the December 2007 Bell Spill, the January

26  2008 Bell Spill, and the spills described in Paragraph 104 were not authorized by

27  the CWA, or by a permit or regulation issued pursuant to the CWA.

28       116.   Palmer Road Creek is a tributary to Sisquoc Creek.  Sisquoc Creek is

1  a tributary to Cat Canyon Creek.  Cat Canyon Creek is a tributary to the Sisquoc

2  River.  The Sisquoc River is a tributary to the Santa Maria River.  The Santa Maria

3  River is a tributary to the Santa Maria River Estuary, a traditionally navigable

4  water that flows into the Pacific Ocean.

5      117.   Palmer Road Creek, Sisquoc Creek, Cat Canyon Creek, the Sisquoc

6  River, and the Santa Maria River each have a bed, banks, and ordinary high water

7  marks.

8      118.   Palmer Road Creek, Sisquoc Creek, Cat Canyon Creek, the Sisquoc

9  River, the Santa Maria River, and the Santa Maria River Estuary are "navigable

10  waters" within the meaning of Sections 311(b)(3) and 502(7) of the CWA, 33

11  U.S.C. §§ 1321(b)(3) and 1362(7), and Section 1001(21) of the OPA, 33 U.S.C.

12  § 2701(21).

13      119.   The July 2007 Bell Spill, the December 2007 Bell Spill, the January

14  2008 Bell Spill, and the spills described in Paragraph 104 were discharges of oil

15  into or upon the navigable waters of the United States or adjoining shorelines

16  within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

17      120.   The July 2007 Bell Spill, the December 2007 Bell Spill, the January

18  2008 Bell Spill, and the spills described in Paragraph 104 were each of a quantity

19  "as may be harmful" within the meaning of Section 311(b)(3) of the CWA, 33

20  U.S.C. § 1321(b)(3), and 40 C.F.R. § 110.3.

21      121.   The July 2007 Bell Spill, the December 2007 Bell Spill, the January

22  2008 Bell Spill, and the spills described in Paragraph 104 were unlawful

23  discharges of a pollutant within the meaning of Section 301(a) of the CWA, 33

24  U.S.C. § 1311(a).

25      122.   The January 2008 Bell Spill, April 2008 Bell Spill, and December

26  2008 Bell Spill were each "incidents" within the meaning of Section 1001(14) of

27  the OPA, 33 U.S.C. § 2701(14).

28      123.   After the January 2008 Bell Spill, EPA incurred costs in the amount

1   of $1,770,461.41 in its efforts to contain and remove oil from water and shorelines,

2   or in taking other actions as necessary to minimize or mitigate damage to the

3   public health or welfare.

4        124.   After the April 2008 Bell Spill, EPA incurred costs in the amount of

5   $44,839.20 to prevent, minimize, or mitigate oil pollution from the Gato Ponds.

6        125.   After the December 2008 Bell Spill, EPA and the Coast Guard

7   incurred costs in the amount of $189,782.16 in their efforts to contain and remove

8   oil from water and shorelines, or in taking other actions as necessary to minimize

9   or mitigate damage to the public health or welfare.

10        126.   The removal costs incurred by EPA and the Coast Guard in

11   connection with the January 2008 Bell Spill, April 2008 Bell Spill, and December

12   2008 Bell Spill were paid from the Fund.

13        127.   On December 30, 2009, the Coast Guard, on behalf of the Fund, sent

14   Defendant a written request under Subchapter I of the OPA for compensation in

15   the amount of $1,770,461.41 for removal costs incurred in connection with the

16   January 2008 Bell Spill.

17        128.   On December 23, 2009, the Coast Guard, on behalf of the Fund, sent

18   Defendant a written request under Subchapter I of the OPA for compensation in

19   the amount of $44,839.20 for removal costs incurred in connection with the April

20   2008 Bell Spill.

21        129.   On December 30, 2009, the Coast Guard, on behalf of the Fund, sent

22   Defendant a written request under Subchapter I of the OPA for compensation in

23   the amount of $189,782.16 for removal costs incurred in connection with the

24   December 2008 Bell Spill.

25        130.   Defendant has not paid the Coast Guard for removal costs incurred in

26   connection with the January 2008 Bell Spill, April 2008 Bell Spill, or December

27   2008 Bell Spill.

28        131.   The July 2007 Bell Spill, the December 2007 Bell Spill, the January

2008 Bell Spill, the December 2008 Bell Spill and the spills listed in Paragraph 104 after 2007 were all releases to waters of the state within the meaning of California Water Code section 13050(e). These spills caused natural resource damages. DFG expended monies from the Oil Pollution Administration Subaccount to respond to these spills which Defendant has not repaid in full to DFG.

<div align="center">Other Spills in Violation of State Law</div>

132. In addition to each of the spills identified in Paragraph 131, Defendant also was responsible for causing other spills in violation of state law, each of which was made to a water of the state.

133. On June 8, 2007, a 6-inch produced water pipe ruptured at Defendant's Bradley Three-Island Facility, causing a spill of crude oil and produced water to a creek bed ("June 2007 Bradley Three-Island Spill").

134. Between January 24, 2008, and February 3, 2008, Defendant experienced at least six spills at its Bradley Three-Island, U-Cal, and Cat Canyon Facilities (the "January/February 2008 Spills").

    a.    On January 24, 2008, a broken generator at Defendant's Bradley Three-Island Facility caused the release of crude oil and produced water being released to a nearby creek bed ("Spill Event No. 1").

    b.    On January 24, 2008, "out of service" omni vessels overflowed and leaked at Defendant's U-Cal Facility, causing a spill of crude oil and produced water being released to an unnamed pond and thereafter to a creek ("Spill Event No. 2").

    c.    On January 24, 2008, omni-pits overflowed and leaked at Defendant's U-Cal Facility, causing a spill of crude oil and produced water being released to an unnamed pond and thereafter to a creek ("Spill Event No. 3").

    d.    On January 27, 2008, waste water containment tank leaked at Defendant's Cat Canyon Facility, causing a spill of crude oil and produced water

1    to be released to a nearby creek ("Spill Event No. 6").

2           e.    On January 27, 2008, an electrical transformer on a power pole
3    fell at Defendant's Bradley Three-Island Facility, causing a spill of PCB-
4    containing oil to be released to an adjacent creek ("Spill Event No. 7").

5           f.    On February 3, 2008, a pool of crude oil and produced water
6    leaked from behind a berm at Defendant's Security Facility, causing a spill of
7    crude oil and produced water to reach a creek ("Spill Event No. 8").

8           135.  On March 3, 2008, a 4-inch corroded flow line was discovered to have
9    previously failed at Defendant's U-Cal Facility directly above a creek, causing a
10   release of crude oil directly into the creek ("March 2008 U-Cal Spill").

11          136.  On July 2, 2009, a leaking injection line at Defendant's Bell Facility
12   caused a spill of crude oil and produced water to reach an unnamed creek ("July
13   2009 Bell Spill").

14                        The Williams B Removal Action

15          137.  On March 12, 2008, EPA observed storage tanks at the Williams B
16   Facility that were uncovered, heavily corroded, and leaking oil onto the ground.
17   EPA observed no secondary containment around the storage tanks.

18          138.  The Williams B Facility is bordered to the west by an unnamed
19   tributary to Cat Canyon Creek.

20          139.  On March 19, 2008, EPA issued Defendant an Order for Removal,
21   Mitigation or Prevention of a Substantial Threat of Oil Discharge ("Williams B
22   Removal Order") under Section 311(c) of the CWA, 33 U.S.C. § 1321(c), directing
23   Defendant to remove the oil from the tanks, demolish the tanks, and excavate
24   contaminated soil.

25          140.  EPA monitored Defendant's performance of the removal action
26   ("Williams B Removal Action") pursuant to the Williams B Removal Order.

27          141.  At the time of the Williams B Removal Order, the Williams B Facility
28   posed a substantial threat of a discharge of oil into or upon Cat Canyon Creek or

                                    - 21 -

1   adjoining shorelines.

2       142.   Defendant owned and/or operated the Williams B Facility at the time
3   of the Williams B Removal Order and the Williams B Removal Action.

4       143.   At all relevant times, the Williams B Facility was a structure, group of
5   structures, equipment, or device used for exploring for, drilling for, producing,
6   storing, handling, transferring, processing, and/or transporting oil.

7       144.   At all relevant times, the Williams B Facility was a "facility" within
8   the meaning of Section 1001(9) of the OPA, 33 U.S.C. § 2701(9).

9       145.   At all relevant times, the Williams B Facility was a facility located on
10  land within the United States that is not submerged land.

11      146.   At all relevant times, the Williams B Facility was an "onshore
12  facility" within the meaning of Section 1001(24) of the OPA, 33 U.S.C.
13  § 2701(24).

14      147.   The circumstances that resulted in the conditions described in
15  Paragraph 137 constituted an "incident" within the meaning of Section 1001(14) of
16  the OPA, 33 U.S.C. § 2701(14).

17      148.   While monitoring the Williams B Removal Action, EPA incurred
18  costs in the amount of $5,340.99 to prevent, minimize, or mitigate oil pollution
19  from the Williams B Facility.

20      149.   EPA's removal costs incurred in connection with the Williams B
21  Removal Action were paid from the Fund.

22      150.   On December 23, 2009, the Coast Guard, on behalf of the Fund, sent
23  Defendant a written request under Subchapter I of the OPA for compensation in
24  the amount of $5,340.99 for removal costs incurred in connection with the
25  Williams B Removal Action.

26      151.   Defendant has not paid the Coast Guard for removal costs incurred in
27  connection with the Williams B Removal Action.

28

- 22 -

Violations of Oil Pollution Prevention Regulations

152.   Each of the oil and gas production facilities identified in Attachment A was in operation on or before August 16, 2002.

153.   At times relevant to this action, each facility identified in Attachment A was located on land within the United States.

154.   At times relevant to this action, each facility identified in Attachment A was located on land within the United States other than submerged lands.

155.   At times relevant to this action, each facility identified in Attachment A was a non-transportation-related "onshore facility" within the meaning of 40 C.F.R. § 112.2.

156.   At times relevant to this action, each facility identified in Attachment A was engaged in drilling, producing, gathering, storing, processing, refining, transferring, distributing, using, or consuming oil and oil products.

157.   At times relevant to this action, each facility identified in Attachment A had oil in one or more aboveground containers, or containers that were not "permanently closed" as defined in 40 C.F.R. § 112.2.

158.   The Bell Facility and the Davis Facility each have a total oil storage capacity of at least one million gallons.

159.   The Bell Facility and the Davis Facility each have had a reportable oil discharge of at least 10,000 gallons within the last five years.

160.   Drainage from the Chamberlin Facility travels downgradient for approximately 1,000 feet before entering Zaca Tributary.

161.   Drainage from the Davis Facility travels downgradient for approximately 800 feet before entering Zaca Tributary.

162.   Drainage from the Bell Facility travels directly into Palmer Road Creek through pipes that cross Palmer Road Creek.

163.   Drainage from the Williams B Facility travels downgradient for approximately 250 feet before entering an unnamed tributary to Cat Canyon Creek.

1    164.   Drainage from the Battles Facility travels downgradient along Battles

2    Road for half a mile before entering a flood control channel that flows into the

3    Santa Maria River.

4    165.   Drainage from the Casmalia Facility travels downgradient for

5    approximately 450 feet before entering an unnamed tributary to Casmalia Creek.

6    166.   Drainage from the Escolle Facility travels downgradient for

7    approximately 600 feet before entering an unnamed tributary to Casmalia Creek.

8    167.   The unnamed tributaries to Casmalia Creek described in Paragraphs

9    165 and 166 are tributaries to Casmalia Creek.  Casmalia Creek flows into the

10   Pacific Ocean, a traditionally navigable water.

11   168.   The unnamed tributaries to Casmalia Creek described in Paragraphs

12   165 and 166 and Casmalia Creek each have a bed, banks, and ordinary high water

13   marks.

14   169.   The unnamed tributaries to Casmalia Creek described in Paragraphs

15   165 and 166 and Casmalia Creek are "navigable waters" within the meaning of

16   Sections 311(b)(3) and 502(7) of the CWA, 33 U.S.C. §§ 1321(b)(3) and 1362(7).

17   170.   Drainage from the Lakeview Facility travels downgradient for

18   approximately one mile before entering Bradley Canyon Creek.

19   171.   Drainage from the Lloyd Facility travels downgradient for

20   approximately 50 feet before entering an unnamed tributary to Bradley Canyon

21   Creek.

22   172.   Drainage from the Los Flores Facility travels downgradient for

23   approximately 380 feet before entering an unnamed tributary to Bradley Canyon

24   Creek.

25   173.   Drainage from the Security Facility travels downgradient for

26   approximately 200 feet before entering an unnamed tributary to Bradley Canyon

27   Creek.

28   174.   Drainage from the U-Cal Facility travels directly into Bradley Canyon

- 24 -

1  Creek or an unnamed tributary to Bradley Canyon Creek through pipes that cross

2  Bradley Canyon Creek or an unnamed tributary to Bradley Canyon Creek.

3      175.   The unnamed tributaries to Bradley Canyon Creek described in

4  Paragraphs 171 through 174 are tributaries to Bradley Canyon Creek.  Bradley

5  Canyon Creek is a tributary to the Santa Maria River.

6      176.   The unnamed tributaries to Bradley Canyon Creek described in

7  Paragraphs 171 through 174 and Bradley Canyon Creek each have a bed, banks,

8  and ordinary high water marks.

9      177.   The unnamed tributaries to Bradley Canyon Creek described in

10  Paragraphs 171 through 174 and Bradley Canyon Creek are "navigable waters"

11  within the meaning of Sections 311(b)(3) and 502(7) of the CWA, 33 U.S.C.

12  §§ 1321(b)(3) and 1362(7).

13      178.   At times relevant to this action, a discharge of oil from each facility

14  identified in Attachment A could reasonably have been expected to cause a film or

15  sheen upon or discoloration of the surface of the water of the navigable waters of

16  the United States or adjoining shorelines, or to cause a sludge or emulsion to be

17  deposited beneath the surface of the water of the navigable waters of the United

18  States or upon adjoining shorelines.

19      179.   At times relevant to this action, each facility identified in Attachment

20  A was subject to the Oil Pollution Prevention regulations set forth at 40 C.F.R. Part

21  112.

22                    FIRST CLAIM FOR RELIEF

23          Violations of Section 311 of the Clean Water Act

24      180.   Paragraphs 1 through 179 are realleged and incorporated herein by

25  reference.

26      181.   The discharges alleged in Paragraphs 65 through 70 and Paragraphs

27  91 through 106 violated Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

28      182.   Pursuant to Section 311(b)(7)(A) and (D) of the CWA, 33 U.S.C.

1  § 1321(b)(7)(A) and (D), Defendant is liable for a civil penalty of up to $1,100 per

2  barrel of oil discharged, or, if it is established that the violations were the result of

3  gross negligence or willful misconduct, a civil penalty of up to $4,300 per barrel of

4  oil discharged.

5                    SECOND CLAIM FOR RELIEF

6          Violations of Section 301 of the Clean Water Act

7          183.   Paragraphs 1 through 179 are realleged and incorporated herein by

8  reference.

9          184.   The discharges alleged in Paragraphs 65 through 70 and Paragraphs

10  91 through 106 violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

11          185.   Subject to a reasonable opportunity for further investigation or

12  discovery, violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), are

13  likely to continue unless enjoined by an order of the Court.

14          186.   Defendant is subject to appropriate injunctive relief pursuant to

15  Section 309(b) of the CWA, 33 U.S.C. § 1319(b), to prevent further discharges

16  from its facilities into waters of the United States.

17                    THIRD CLAIM FOR RELIEF

18      Failure to Prepare and Implement and/or Maintain SPCC Plans

19                      (40 C.F.R. Part 112)

20          187.   Paragraphs 1 through 179 are realleged and incorporated herein by

21  reference.

22          188.   At each of the oil and gas production facilities identified in

23  Attachment A, Defendant failed to prepare and implement an SPCC Plan in

24  accordance with the requirements of 40 C.F.R. Part 112, as required by 40 C.F.R.

25  § 112.3, and/or failed to maintain an SPCC Plan in accordance with the

26  requirements of 40 C.F.R. Part 112 (2002), as required by 40 C.F.R. § 112.3(a).

27          189.   At certain oil and gas production facilities identified in Attachment A,

28  Defendant:

    a.  Failed to prepare an SPCC Plan, as required by 40 C.F.R. § 112.1(e), 112.3, and 112.7 and/or 40 C.F.R. § 112.1(e), 112.3, and 112.7 (2002) (Lakeview and Williams B Facilities);

    b.  Failed to review, amend as necessary, and recertify its SPCC Plan, as required by 40 C.F.R. § 112.5(a) and/or 40 C.F.R. § 112.5(a) (2002) (Davis Facility);

    c.  Failed to include in its SPCC Plan adequate detail regarding discharge prevention and drainage controls, as required by 40 C.F.R. § 112.7(a)(3) and/or 40 C.F.R. § 112.7(c) (2002) (Bell, Lloyd, and Security Facilities);

    d.  Failed to provide and maintain adequate containment and drainage controls, as required by 40 C.F.R. § 112.7(c), 112.7(h)(1), and 112.9(c)(2) and/or 40 C.F.R. § 112.7(c), 112.7(e)(4), and 112.7(e)(5) (2002) (Battles, Bell, Casmalia, Davis, Lakeview, Lloyd, Los Flores, Security, U-Cal, and Williams B Facilities);

    e.  Failed to maintain with its SPCC Plan adequate written inspection procedures and records of inspections, as required by 40 C.F.R. § 112.7(e) and/or 112.7(e)(8) (2002) (Bell, Security, and U-Cal Facilities);

    f.  Failed to inspect for and remove accumulations of discharged oil, as required by 40 C.F.R. § 112.9(b)(1) and (2) and/or 40 C.F.R. § 112.7(e)(5) (2002) (Battles, Bell, Casmalia, Chamberlin, Davis, Los Flores, Security, U-Cal, and Williams B Facilities);

    g.  Used containers for the storage of oil whose material and construction were incompatible with the material stored and the conditions of storage, in violation of 40 C.F.R. § 112.9(c)(1) and/or 40 C.F.R. § 112.7(e)(5) (2002) (Battles, Lakeview, Lloyd, and Williams B Facilities);

    h.  Failed to develop and implement a program of flowline maintenance, as required by 40 C.F.R. § 112.9(d)(3) and/or 40 C.F.R. § 112.7(e)(5) (2002) (Battles, Bell, Casmalia, Chamberlin, Davis, Escolle, Lakeview, Lloyd, Los

1 | Flores, Security, U-Cal, and Williams B Facilities); and

2 |          i.     Failed to address in its SPCC Plan the requirements for onshore

3 | oil drilling and workover facilities set forth in 40 C.F.R. § 112.10 and/or 40 C.F.R.

4 | § 112.7(e)(6) (2002) (Battles, Bell, Casmalia, Chamberlin, Davis, Escolle, Lloyd,

5 | Los Flores, Security, and U-Cal Facilities).

6 |      190.   Subject to a reasonable opportunity for further investigation or

7 | discovery, these violations are likely to continue unless enjoined by an order of the

8 | Court.

9 |      191.   Pursuant to Section 311(b)(7)(C) of the CWA, 33 U.S.C.

10 | § 1321(b)(7)(C), and 40 C.F.R. § 19, Defendant is liable for a civil penalty of up to

11 | $32,500 per day of violation for each violation of the Oil Pollution Prevention

12 | regulations occurring from March 15, 2004, through January 12, 2009, and up to

13 | $37,500 per day of violation for each violation of the Oil Pollution Prevention

14 | regulations occurring after January 12, 2009.

15 | <div align="center">FOURTH CLAIM FOR RELIEF</div>

16 | <div align="center">Failure to Prepare and Submit Facility Response Plans</div>

17 | <div align="center">(40 C.F.R. § 112.20)</div>

18 |      192.   Paragraphs 1 through 179 are realleged and incorporated herein by

19 | reference.

20 |      193.   Defendant failed to prepare and submit to EPA a Facility Response

21 | Plan for the Bell Facility and the Davis Facility in accordance with the

22 | requirements of 40 C.F.R. § 112.20.

23 |      194.   By failing to prepare and submit to EPA a Facility Response Plan for

24 | the Bell Facility and the Davis Facility, Defendant violated 40 C.F.R. § 112.20.

25 |      195.   Subject to a reasonable opportunity for further investigation or

26 | discovery, these violations are likely to continue unless enjoined by an order of the

27 | Court.

28 |      196.   Pursuant to Section 311(b)(7)(C) of the CWA, 33 U.S.C.

1  § 1321(b)(7)(C), and 40 C.F.R. § 19, Defendant is liable for a civil penalty of up to

2  $32,500 per day of violation for each such violation occurring from March 15,

3  2004, through January 12, 2009, and up to $37,500 per day of violation for each

4  such violation occurring after January 12, 2009.

5  <center>FIFTH CLAIM FOR RELIEF</center>

6  <center>Recovery of Removal Costs Under the Oil Pollution Act of 1990</center>

7  197.   Paragraphs 1 through 179 are realleged and incorporated herein by

8  reference.

9  198.   Defendant is the responsible party for facilities from which oil was

10  discharged, or which posed the substantial threat of a discharge of oil, into or upon

11  the navigable waters or adjoining shorelines in connection with the January 2008

12  Davis Spill, the January 2008 Bell Spill, the April 2008 Bell Spill, the December

13  2008 Bell Spill, and the Williams B Removal Action.

14  199.   As the responsible party for such facilities, Defendant is liable to the

15  United States, pursuant to Section 1002(a) of the OPA, 33 U.S.C. § 2702(a), for at

16  least $2,414,345.63 in removal costs that resulted from the incidents listed in

17  Paragraph 198, along with interest and attorney's fees.

18  <center>SIXTH CLAIM FOR RELIEF</center>

19  <center>Violations of California Water Code Section 13350</center>

20  200.   Paragraphs 1 through 179 are realleged and incorporated herein by

21  reference.

22  201.   The discharges alleged in Paragraphs 68 through 71, Paragraphs 76

23  through 82, Paragraph 84, Paragraphs 90 through 99, Paragraphs 104 through 107,

24  Paragraphs 112 through 119, and Paragraphs 131 through 136 violated California

25  Water Code section 13350(a).

26  202.   Pursuant to California Water Code section 13350(d), Defendant is

27  liable to the Regional Board for a civil penalty of up to $15,000 per day of

28  violation, or up to 20 dollars per gallon of waste discharged.

<center>- 29 -</center>

1               SEVENTH CLAIM FOR RELIEF

2     Violations of California Water Code Section 13385

3     203.   Paragraphs 1 through 179 are realleged and incorporated herein by

4 reference.

5     204.   The discharges alleged in Paragraphs 68 through 71, Paragraphs 76

6 through 82, Paragraph 84, Paragraphs 90 through 99, Paragraphs 104 through 107,

7 Paragraphs 112 through 119, and Paragraph 135 violated California Water Code

8 section 13385(a).

9     205.   Pursuant to California Water Code section 13385(d), Defendant is

10 liable to the Regional Board for a civil penalty of up to $25,000 per day of

11 violation, and up to 25 dollars per gallon of waste discharged in excess of 1,000

12 gallons not recovered.

13               EIGHTH CLAIM FOR RELIEF

14     Violations of California Fish and Game Code Section 5650

15     206.   Paragraphs 1 through 179 are realleged and incorporated herein by

16 reference.

17     207.   The discharges alleged in Paragraphs 68 through 71, Paragraphs 76

18 through 82, Paragraph 84, Paragraphs 90 through 99, Paragraphs 104 through 107,

19 Paragraphs 112 through 119, and Paragraphs 134 through 136 violated California

20 Fish and Game Code section 5650(a).

21     208.   Pursuant to California Fish and Game Code section 5650.1, Defendant

22 is liable to DFG for a civil penalty of up to $25,000 per day of violation.

23               NINTH CLAIM FOR RELIEF

24     Recovery of Natural Resource Damages

25     (California Fish and Game Code Section 12016)

26     209.   Paragraphs 1 through 179 are realleged and incorporated herein by

27 reference.

28     210.   The discharges alleged in Paragraphs 68 through 71, Paragraphs 76

through 82, Paragraph 84, Paragraphs 90 through 99, Paragraphs 104 through 107, Paragraphs 112 through 119, and Paragraphs 134 through 136 resulted in damages to natural resources.

211. Pursuant to California Fish and Game Code section 12016, Defendant is liable to DFG for all actual damages to fish, plant, bird or animal life or their habitat and, in addition, for the reasonable costs incurred in cleaning up the deleterious substances or material or abating its effects, or both.

<center>TENTH CLAIM FOR RELIEF</center>

<center>Recovery of Costs</center>

<center>(California Fish and Game Code Section 13013)</center>

212. Paragraphs 1 through 179 are realleged and incorporated herein by reference.

213. DFG made expenditures from the Oil Pollution Administrative Subaccount to respond to the discharges alleged in Paragraphs 68 through 71, Paragraphs 76 through 82, Paragraph 84, Paragraphs 90 through 99, Paragraphs 104 through 107, Paragraphs 112 through 119, and Paragraphs 134 through 136.

214. DFG incurred costs arising from the administration and enforcement of applicable pollution laws in connection with the discharges described in the paragraph immediately above.

215. Pursuant to California Fish and Game Code section 13013(c), Defendant is liable to DFG for all such expenditures and costs.

<center>PRAYER FOR RELIEF</center>

WHEREFORE, Plaintiffs, the United States of America and the People of the State of California *ex rel.* California Department of Fish and Game and California Regional Water Quality Control Board, Central Coast Region, respectfully request that the Court:

1. Issue an order requiring Defendant to take all appropriate action to prevent future discharges of oil into waters of the United States and waters of the

<center>- 31 -</center>

1   state;

2       2.     Enter judgment against Defendant and award the United States civil

3   penalties in an amount up to $1,100 per barrel of oil discharged for the discharges

4   alleged above, or, if it is established that the discharges were the result of gross

5   negligence or willful misconduct, in an amount up to $4,300 per barrel of oil

6   discharged;

7       3.     Issue an order requiring Defendant to take all appropriate action to

8   ensure implementation of the Oil Pollution Prevention regulations;

9       4.     Enter judgment against Defendant and award the United States civil

10   penalties in an amount up to $32,500 per day of violation for each violation of the

11   Oil Pollution Prevention regulations at 40 C.F.R. Part 112 occurring from March

12   15, 2004, through January 12, 2009, and up to $37,500 per day of violation for

13   each violation of the Oil Pollution Prevention regulations occurring after January

14   12, 2009;

15       5.     Enter judgment against Defendant and award the United States at least

16   $2,414,345.63 in removal costs incurred by the United States in connection with

17   the incidents listed in Paragraph 198, along with interest and attorney's fees;

18       6.     Enter judgment against Defendant and award the Regional Board civil

19   penalties in an amount up to 20 dollars per gallon discharged or up to $15,000 per

20   day of violation (whichever is greater) for violations of California Water Code

21   section 13350, or in the alternative, civil penalties in an amount up to $25,000 per

22   day of violation plus 25 dollars per gallon of waste discharged in excess of 1,000

23   gallons not cleaned up pursuant to California Water Code section 13385

24   (whichever is greater);

25       7.     Enter judgment against Defendant and award DFG civil penalties in

26   an amount up to $25,000 per violation of California Fish and Game Code section

27   5650;

28       8.     Enter judgment against Defendant and award DFG an amount

1  sufficient to compensate for the natural resource damages caused by Defendant's

2  releases pursuant to California Fish and Game Code section 12016;

3       9.    Enter judgment against Defendant and award DFG at $194,938 in

4  currently outstanding unpaid response costs pursuant to California Fish and Game

5  Code section 13013 (the amount of such response costs owed to DFG is expected

6  to change over time);

7       10.   Award DFG and the Regional Board all costs of investigating and

8  prosecuting the action, including expert fees, reasonable attorney's fees, and costs

9  pursuant to California Code of Civil Procedure section 1021.8; and

10       11.   Grant such other relief as this Court deems just and proper.

- 33 -

Respectfully submitted,


FOR THE UNITED STATES OF AMERICA:


_IGNACIA S. MORENO_

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division


_Mark Sabath_

MARK SABATH
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Massachusetts Bar Number: 659551
Telephone: (202) 514-1196
Facsimile: (202) 514-2583
E-mail: mark.sabath@usdoj.gov

OF COUNSEL:

MICHAEL MASSEY
U.S. Environmental Protection Agency,
    Region IX
75 Hawthorne Street
San Francisco, CA 94105

CHERYL T. ROSE
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

THOMAS H. VAN HORN
United States Coast Guard
National Pollution Funds Center
4200 Wilson Blvd., Suite 1000
Arlington, VA 20598-7100

- 34 -

FOR THE PEOPLE OF THE STATE OF
CALIFORNIA, *ex rel.* CALIFORNIA
DEPARTMENT OF FISH AND GAME and
CALIFORNIA REGIONAL WATER
QUALITY CONTROL BOARD, CENTRAL
COAST REGION:

KAMELA D. HARRIS.
Attorney General of California
RICHARD J. MAGASIN
Supervising Deputy Attorney General


GARY E. TAVETIAN
Deputy Attorney General
California Bar No. 117135
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone:  (213) 897-2639
Facsimile:  (213) 897-2802
E-mail:  Gary.Tavetian@doj.ca.gov

# ATTACHMENT A

## Facilities In Violation of Oil Pollution Prevention Regulations

## (40 C.F.R. Part 112)

1.   Battles Facility, 1348 Battles Road, Santa Maria, CA

2.   Bell Facility, 6780 Palmer Road, Santa Maria, CA

3.   Casmalia Facility, 5080 Black Road, Santa Maria, CA

4.   Chamberlin Facility, 5017 Zaca Station Road, Los Olivos, CA

5.   Davis Facility, 5017 Zaca Station Road, Los Olivos, CA

6.   Escolle Facility, 7275 Graciosa Road, Santa Maria, CA

7.   Lakeview Facility, 2617 East Clark Avenue, Santa Maria, CA

8.   Lloyd Facility, 5200 Dominion Road, Santa Maria, CA

9.   Los Flores Facility, 6151 Dominion Road, Santa Maria, CA

10.  Security Facility, 5200 Dominion Road, Santa Maria, CA

11.  U-Cal Facility, 6527 Dominion Road, Santa Maria, CA

12.  Williams B Facility, Cat Canyon Road, Santa Maria, CA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV11- 5097 DDP  (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.