1

2

3                                                                    O

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA and  )   Case No. CV 11-05097 DDP (RZx)
     PEOPLE OF THE STATE OF         )
12   CALIFORNIA, ex rel.            )
     CALIFORNIA DEPARTMENT OF       )
13   FISH AND GAME and CALIFORNIA   )
     REGIONAL WATER QUALITY         )   **ORDER DENYING DEFENDANT'S MOTION**
14   CONTROL BOARD, CENTRAL COAST   )   **TO DISMISS**
     REGION,                        )
15                                  )
                     Plaintiff,     )
16                                  )
          v.                        )
17                                  )
     HVI CAT CANYON, INC., f/k/a    )
18   GREKA OIL & GAS, INC..,        )   [Dkt. No. 6]
                                    )
19                   Defendants.    )
                                    )
20   _____)

21        Presently before the court is Defendant HVI Cat Canyon, Inc.

22   ("Greka")'s Motion to Dismiss Plaintiffs' First, Sixth, Seventh,

23   Eighth, Ninth, and Tenth Claims for Relief.  Having considered the

24   submissions of the parties and heard oral argument, the court

25   denies the motion and adopts the following order.

26   **I.    Background**

27        Defendant owns or operates several oil and gas production

28   facilities near Santa Barbara, California.  (Complaint ¶¶ 57-59.)

1   Between 2005 and 2009, oil was spilled or released from Defendant's

2   facilities into nearby waters on twenty separate occasions.

3   (Compl. ¶¶ 131, 133-136.)  Plaintiffs the United States of America

4   ("United States") and the People of the State of California

5   ("State") jointly filed the instant action for civil penalties,

6   injunctive relief, recovery costs, and other damages.  (Complaint ¶

7   1.)

8       The United States brings five claims under the Clean Water Act

9   ("CWA") 33 U.S.C. § 1251 et seq. and Oil Pollution Act of 1990, 33

10  U.S.C. § 2701 et seq.  The State brings five claims under the

11  California Water Code § 13000 et seq. and the California Fish and

12  Game Code §5650 et seq., asserting that this court has supplemental

13  jurisdiction over the state law claims.   Defendant now moves to

14  dismiss the United States' first claim, brought under Section 311

15  of the CWA, 33 U.S.C. § 1321(b).  Defendant also moves to dismiss

16  all five state law claims.

17  **II.  Legal Standard**

18      A complaint will survive a motion to dismiss when it contains

19  "sufficient factual matter, accepted as true, to state a claim to

20  relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.

21  Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

22  544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court

23  must "accept as true all allegations of material fact and must

24  construe those facts in the light most favorable to the plaintiff."

25  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a

26  complaint need not include "detailed factual allegations," it must

27  offer "more than an unadorned, the-defendant-unlawfully-harmed-me

28  accusation." Iqbal, 129 S. Ct. at 1949.  Conclusory allegations or

allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 1950. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 1949 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is a "context-specific" task, "requiring the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

**III.  Discussion**

A.  Clean Water Act Section 311

Section 311 of the Clean Water Act prohibits the discharge of oil into "the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone . . . in such quantities as may be harmful . . . ." 33 U.S.C. § 1321(b)(3) (emphasis added).  Other portions of the CWA use slightly different language.  Section 301(a), for example, prohibits the "addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12) (emphasis added).

The CWA defines the term "navigable waters" as "the waters of the United States, including the territorial seas." 13 U.S.C. §

1362(7).  Defendant argues that this definition does not apply to
Section 311 because the terms "navigable waters" and "navigable
waters of the United States" have separate and differing meanings.
Defendant posits that, the CWA definition of "navigable waters"
notwithstanding, "navigable waters of the United States" means
"traditionally navigable waters."  Defendant argues that while the
bodies of water into which Defendant spilled oil may be "navigable
waters," those bodies are not "navigable waters of the United
States," and that the United States' Section 311 claim must
therefore be dismissed.[1]

    The Sixth Circuit addressed, and rejected, this same argument
in United States v. Ashland Oil & Transp. Co., 504 F.2d 1317 (6th
Cir. 1974).  The Ashland Oil court explained that the CWA, then
known as the Federal Water Pollution Control Act ("FWPCA"),
reflected "Congress' clear intention as revealed in the Act itself
. . . to effect marked improvement in the quality of the total
water resources of the United States."  Ashland Oil, 504 F.2d at
1323.  The court cited Congressional statements explaining that the
CWA "defines the term 'navigable waters' broadly for water quality
purposes.  It means all 'the waters of the United States' in a
geographical sense.  It does not mean 'navigable waters of the
United States' in the technical sense as we sometimes see in some
laws."  Id. (citing 118 Cong.Rec. 33756-57 (1972)).  The court
therefore concluded that the FWPCA's definition of "navigable
waters" applied to the term "navigable waters of the United States"
used in Section 311, because "any other reading would violate the

_____

    [1] The parties do not dispute that the bodies of water at issue
here are not "traditionally navigable waters."

4

1  specific language of the definition . . . and turn a great

2  legislative enactment into a meaningless jumble of words." <u>Id.</u> at

3  1325.

4       This court agrees.  Defendant asserts that <u>Ashland Oil</u>

5  conflicts with earlier law, which, prior to the CWA, "interpreted

6  the phrase 'navigable waters of the United States' in the [CWA]'s

7  predecessor statutes to refer to interstate waters that are

8  'navigable in fact' or readily susceptible of being rendered so."

9  <u>Rapanos v. United States</u>, 547 U.S. 715, 723-24 (2006) (plurality

10 opinion).  As the Supreme Court has recognized, however, the 1972

11 Amendments to the FWPCA "were viewed by Congress as a 'total

12 restructuring' and 'complete rewriting' of the existing water

13 pollution legislation . . . ."  <u>City of Milwaukee v. Illinois and</u>

14 <u>Michigan</u>, 451 U.S. 304, 317 (1981).  Whether Congress used the term

15 "navigable waters of the United States" to refer to some other

16 meaning prior to the CWA is, therefore, not relevant to determining

17 Congressional intent with respect to that term as used in the

18 FWPCA/CWA.  As explained by the <u>Ashland Oil</u> court, Congress clearly

19 did not intend to use the term "navigable waters of the United

20 States" in the CWA in the narrow, technical sense advocated by

21 Defendant, but rather in a broad sense geared toward effecting

22 marked improvement in the quality of the country's total water

23 resources.

24      B.  State Claims

25      The State alleges in the Seventh Claim for Relief that

26 Defendant violated California Water Code § 13385(d).  California

27 Water Code § 13385 imposes liability under state law for, among

28 other things, violations of the CWA.  Cal. Water Code §

1   13385(a)(5).  Section 13385 requires the Attorney General to

2   petition the superior court to impose civil liability on a polluter

3   "upon request of a regional board or the state board."   Cal. Water

4   Code § 13385(b)(2).  Relying on this language, Defendant argues

5   that the State cannot assert its claim in federal court.  This

6   court disagrees.  Section 13385 does not contain a jurisdiction

7   stripping provision, nor does the Attorney General's mandate to

8   file in state court upon request of a state or local board suggest

9   that the Attorney General's enforcement powers may <u>only</u> be

10  exercised in state court at the direction of a board.[2]

11       Defendant also argues that this court does not have

12  supplemental jurisdiction over any of the State's five claims

13  (Claims Five through Ten).[3]  This court may exercise supplemental

14  jurisdiction over claims that are sufficiently related to claims

15  over which this court has original jurisdiction that they are part

16  of the same case or controversy.  28 U.S.C. § 1367.  The state and

17  federal claims need only share a "common nucleus of operative

18  fact," such they would ordinarily be tried in a single proceeding.

19  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966).  Subject to

20  the "common nucleus" constraint, this court may exercise pendent

21  party jurisdiction over claims involving parties who do not

22

23  ─────────────────

24       [2] This reasoning applies with equal force to the nearly
    identical language of California Water Code § 13350(g), which forms
25  the basis of the State's Sixth Claim for Relief.  California Water
    Code § 13350(g) states "The Attorney General, upon request of a
26  regional board or the state board, shall petition the superior
    court . . . ."

27       [3] <u>California v. United States Dep't. of Navy</u>, 845 F.2d 222
28  (9th Cir. 1988), cited by Defendant, concerns original
    jurisdiction, not supplemental jurisdiction.

1   themselves bring independent federal claims.  <u>Mendoza v. Zirkle</u>

2   <u>Fruit Co.</u>, 301 F.3d 1163, 1174 (9th Cir. 2002).

3       Here, the State's claims are based on the same oil spills at

4   issue in the United States' federal claims, as well as certain

5   additional spills.  The core facts of all the claims presented

6   revolve around Defendant's release of oil from facilities near

7   Santa Barbara, California into nearby waters.  It is likely that

8   the same witnesses will describe the oil spills underlying the

9   federal claims as well as those spills underlying purely state

10  claims.  Furthermore, every oil spill will likely be relevant to

11  both the state and federal claims to the extent that penalties for

12  both categories of claims depend to some extent on the Defendant's

13  history of conduct.  Because all ten claims brought here share a

14  common core of facts and are factually related to one another, this

15  court can and should exercise supplemental jurisdiction over the

16  State's five state law claims.

17  **IV.  Conclusion**

18      For the reasons stated above, Defendant's Motion to Dismiss

19  the First, Sixth, Seventh, Eighth, Ninth, and Tenth Claims for

20  Relief is DENIED.

21

22

    IT IS SO ORDERED.

23

24

25

    Dated: June 8, 2012

26                          DEAN D. PREGERSON
                            United States District Judge

27

28