1

2

3                                                                      O

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA and  )   Case No. CV 11-05097 DDP (RZx)
     PEOPLE OF THE STATE OF         )
12   CALIFORNIA, ex rel.            )
     CALIFORNIA DEPARTMENT OF       )
13   FISH AND GAME and CALIFORNIA   )
     REGIONAL WATER QUALITY         )   **AMENDED ORDER DENYING DEFENDANT'S**
14   CONTROL BOARD, CENTRAL COAST   )   **MOTION TO DISMISS**
     REGION,                        )
15                                  )
                   Plaintiff,       )
16                                  )
                                    )
17        v.                        )
                                    )
18   HVI CAT CANYON, INC., f/k/a    )
     GREKA OIL & GAS, INC..,        )
19                                  )
                   Defendants.      )
20   _____)

21        Presently before the court is Defendant HVI Cat Canyon, Inc.

22   ("Greka")'s Motion to Dismiss Plaintiffs' First, Sixth, Seventh,

23   Eighth, Ninth, and Tenth Claims for Relief.  Having considered the

24   submissions of the parties and heard oral argument, the court

25   denies the motion and adopts the following order.

26   **I.    Background**

27        Defendant owns or operates several oil and gas production

28   facilities near Santa Barbara, California.  (Complaint ¶¶ 57-59.)

Between 2005 and 2009, oil was spilled or released from Defendant's facilities into nearby waters on twenty-one separate occasions.[1] (Compl. ¶¶ 65, 68, 91, 94, 97, 104, 133-136.)  Plaintiffs the United States of America ("United States") and the People of the State of California ("State") jointly filed the instant action for civil penalties, injunctive relief, recovery costs, and other damages.  (Compl. ¶ 1.)

The United States brings five claims under the Clean Water Act ("CWA") 33 U.S.C. § 1251 et seq. and Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq.  The State brings five claims under the California Water Code § 13000 et seq. and the California Fish and Game Code §5650 et seq., asserting that this court has supplemental jurisdiction over the state law claims.[2]  Defendant now moves to dismiss the United States' first claim, brought under Section 311 of the CWA, 33 U.S.C. § 1321(b).[3]  Defendant also moves to dismiss all five state law claims.

## II.  Legal Standard

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

---

[1] Some, but not all, of the spills are alleged to have violated both federal and state law.

[2] The Complaint alleges that the spills identified in paragraphs 131 and 133-136 violated state law. (Compl. ¶ 32.)  Of these, only the spills described in paragraph 131 are also alleged to have violated federal law.  (Id. ¶¶ 119, 120.)

[3] The Complaint alleges that the spills described in paragraphs 65-70 and 91-106 of the Complaint violated Section 311 of the Clean Water Act.  (Compl. ¶ 181.)

1  570 (2007)).  When considering a Rule 12(b)(6) motion, a court must
2  "accept as true all allegations of material fact and must construe
3  those facts in the light most favorable to the plaintiff." Resnick
4  v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint
5  need not include "detailed factual allegations," it must offer
6  "more than an unadorned, the-defendant-unlawfully-harmed-me
7  accusation." Iqbal, 556 U.S. at 678.  Conclusory allegations or
8  allegations that are no more than a statement of a legal conclusion
9  "are not entitled to the assumption of truth." Id. at 679.  In
10 other words, a pleading that merely offers "labels and
11 conclusions," a "formulaic recitation of the elements," or "naked
12 assertions" will not be sufficient to state a claim upon which
13 relief can be granted.  Id. at 678 (citations and internal
14 quotation marks omitted).

15      "When there are well-pleaded factual allegations, a court
16 should assume their veracity and then determine whether they
17 plausibly give rise to an entitlement of relief." Id. at 679.
18 Plaintiffs must allege "plausible grounds to infer" that their
19 claims rise "above the speculative level." Twombly, 550 U.S. at
20 555. "Determining whether a complaint states a plausible claim for
21 relief" is a "context-specific task that requires the reviewing
22 court to draw on its judicial experience and common sense." Iqbal,
23 556 U.S. at 679.

24 **III.  Discussion**

25      A.  Clean Water Act Section 311

26      Section 311 of the Clean Water Act prohibits the discharge of
27 oil into "the navigable waters of the United States, adjoining
28 shorelines, or into or upon the waters of the contiguous zone . . .

1    in such quantities as may be harmful . . . ."  33 U.S.C. §

2    1321(b)(3) (emphasis added).  Other portions of the CWA use

3    slightly different language.  Section 301(a), for example,

4    prohibits the "addition of any pollutant to <u>navigable waters</u> from

5    any point source."  33 U.S.C. § 1362(12) (emphasis added).

6         The CWA defines the term "navigable waters" as "the waters of

7    the United States, including the territorial seas."  13 U.S.C. §

8    1362(7).  Defendant argues that this definition does not apply to

9    Section 311 because the terms "navigable waters" and "navigable

10   waters of the United States" have separate and differing meanings.

11   Defendant posits that, the CWA definition of "navigable waters"

12   notwithstanding, "navigable waters of the United States" means

13   "traditionally navigable waters."  Defendant argues that while the

14   bodies of water into which Defendant spilled oil may be "navigable

15   waters," those bodies are not "navigable waters of the United

16   States," and that the United States' Section 311 claim must

17   therefore be dismissed.[4]

18        The Sixth Circuit addressed, and rejected, this same argument

19   in <u>United States v. Ashland Oil & Transp. Co.</u>, 504 F.2d 1317 (6th

20   Cir. 1974).  The <u>Ashland Oil</u> court explained that the CWA, then

21   known as the Federal Water Pollution Control Act ("FWPCA"),

22   reflected "Congress' clear intention as revealed in the Act itself

23   . . . to effect marked improvement in the quality of the total

24   water resources of the United States."  <u>Ashland Oil</u>, 504 F.2d at

25   1323.  The court cited Congressional statements explaining that the

26   CWA "defines the term 'navigable waters' broadly for water quality

27   _____

28        [4] The parties do not dispute that the bodies of water at issue
     here are not "traditionally navigable waters."

purposes.  It means all 'the waters of the United States' in a geographical sense.  It does not mean 'navigable waters of the United States' in the technical sense as we sometimes see in some laws."  Id. (citing 118 Cong.Rec. 33756-57 (1972)).  The court therefore concluded that the FWPCA's definition of "navigable waters" applied to the term "navigable waters of the United States" used in Section 311, because "any other reading would violate the specific language of the definition . . . and turn a great legislative enactment into a meaningless jumble of words."  Id. at 1325.

This court agrees.  Defendant asserts that Ashland Oil conflicts with earlier law, which, prior to the CWA, "interpreted the phrase 'navigable waters of the United States' in the [CWA]'s predecessor statutes to refer to interstate waters that are 'navigable in fact' or readily susceptible of being rendered so." Rapanos v. United States, 547 U.S. 715, 723-24 (2006) (plurality opinion).  As the Supreme Court has recognized, however, the 1972 Amendments to the FWPCA "were viewed by Congress as a 'total restructuring' and 'complete rewriting' of the existing water pollution legislation . . . ."  City of Milwaukee v. Illinois and Michigan, 451 U.S. 304, 317 (1981).  Whether Congress used the term "navigable waters of the United States" to refer to some other meaning prior to the CWA is, therefore, not relevant to determining Congressional intent with respect to that term as used in the FWPCA/CWA.  As explained by the Ashland Oil court, Congress clearly did not intend to use the term "navigable waters of the United States" in the CWA in the narrow, technical sense advocated by Defendant, but rather in a broad sense geared toward effecting

5

1  marked improvement in the quality of the country's total water
2  resources.
3      B.  State Claims
4      The State alleges in the Seventh Claim for Relief that
5  Defendant violated California Water Code § 13385(d).  California
6  Water Code § 13385 imposes liability under state law for, among
7  other things, violations of the CWA.  Cal. Water Code §
8  13385(a)(5).  Section 13385 requires the Attorney General to
9  petition the superior court to impose civil liability on a polluter
10 "upon request of a regional board or the state board."  Cal. Water
11 Code § 13385(b)(2).  Relying on this language, Defendant argues
12 that the State cannot assert its claim in federal court.  This
13 court disagrees.  Section 13385 does not contain a jurisdiction
14 stripping provision, nor does the Attorney General's mandate to
15 file in state court upon request of a state or local board suggest
16 that the Attorney General's enforcement powers may <u>only</u> be
17 exercised in state court at the direction of a board.[5]
18     Defendant also argues that this court does not have
19 supplemental jurisdiction over any of the State's five claims
20 (Claims Five through Ten).[6]  This court may exercise supplemental
21 jurisdiction over claims that are sufficiently related to claims
22 over which this court has original jurisdiction that they are part
23 ─────────────────
24     [5] This reasoning applies with equal force to the nearly
    identical language of California Water Code § 13350(g), which forms
25  the basis of the State's Sixth Claim for Relief.  California Water
    Code § 13350(g) states "The Attorney General, upon request of a
26  regional board or the state board, shall petition the superior
    court . . . ."
27     [6] <u>California v. United States Dep't. of Navy</u>, 845 F.2d 222
28  (9th Cir. 1988), cited by Defendant, concerns original
    jurisdiction, not supplemental jurisdiction.

1    of the same case or controversy.  28 U.S.C. § 1367.  The state and

2    federal claims need only share a "common nucleus of operative

3    fact," such they would ordinarily be tried in a single proceeding.

4    United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Subject to

5    the "common nucleus" constraint, this court may exercise pendent

6    party jurisdiction over claims involving parties who do not

7    themselves bring independent federal claims.  Mendoza v. Zirkle

8    Fruit Co., 301 F.3d 1163, 1174 (9th Cir. 2002).

9        Here, the State's claims are based on the same oil spills at

10   issue in the United States' federal claims, as well as certain

11   additional spills.  The core facts of all the claims presented

12   revolve around Defendant's release of oil from facilities near

13   Santa Barbara, California into nearby waters.  It is likely that

14   the same witnesses will describe the oil spills underlying the

15   federal claims as well as those spills underlying purely state

16   claims.  Furthermore, every oil spill will likely be relevant to

17   both the state and federal claims to the extent that penalties for

18   both categories of claims depend to some extent on the Defendant's

19   history of conduct.  Because all ten claims brought here share a

20   common core of facts and are factually related to one another, this

21   court can and should exercise supplemental jurisdiction over the

22   State's five state law claims.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**IV.   Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss the First, Sixth, Seventh, Eighth, Ninth, and Tenth Claims for Relief is DENIED.


IT IS SO ORDERED.


Dated: January 16, 2013

DEAN D. PREGERSON
United States District Judge